IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TAMARA STANFIELD, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-16-4149 |
| WARDEN RICHARD GRAHAM, JR.,[1] | * | |
| Defendants. | * | |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Warden Richard Graham, Security Chief Bradley Butler, Sgt. Steven Beeman, Lt. Jeffery Shimko, and Commissioner of Correction Dayena Corcoran's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 11).[2] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

---

[1] The Court will direct the Clerk to amend the docket to reflect Defendants' full names and proper titles.

[2] Also pending is Stanfield's Motion for Extension of Time to file his Opposition (ECF No. 13), which the Court will grant nunc pro tunc.

In addition, in his Complaint, Stanfield requests that the Court appoint him an attorney (Compl. at 8, ECF No. 1), which the Court construes as a Motion to Appoint Counsel. Because the Court will grant Defendants' Motion, the Court will deny as moot Stanfield's Motion.

# I. BACKGROUND[3]

On December 19, 2016, Plaintiff Tamara Stanfield, a Maryland Division of Correction ("DOC") prisoner housed at Western Correctional Institution in Cumberland ("WCI"), Maryland, filed a civil rights complaint under 42 U.S.C. § 1983. (ECF No. 1). Stanfield alleges that he has been wrongfully labeled a member of a prison gang known as the Black Guerilla Family ("BGF"). (Compl. at 9). As a result, he has been identified as a member of a "Security Threat Group" ("STG"). (Id.). This identification has resulted in a temporary out-of-state transfer, which took Stanfield away from a legal proceeding, denial of access to jobs and programming in the prison system, and the inability to progress toward parole.[4] (Compl. at 10, 16; id. Ex. A at 1, ECF No. 1-1; id. Ex. B at 3, ECF No. 1-2). Stanfield seeks money damages and an injunction ordering the Department of Public Safety and Correctional Services ("DPSCS") to remove any reference to a gang affiliation from his prison record. (Compl. at 8, 18).

On May 31, 2017, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 11). On June 30, 2017, Stanfield filed an Opposition. (ECF No. 14). To date, Defendants have not filed a Reply.

---

[3] Unless otherwise noted, the facts outlined here are set forth in Stanfield's Complaint (ECF No. 1). To the extent that the Court discusses facts that Stanfield does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Stanfield. The Court will address additional facts when discussing applicable law.

[4] Stanfield also complains that the Honorable Timothy Finan failed to fully consider the merits of his appeal to the Circuit Court for Allegany County, Maryland of his administrative grievance concerning his STG member designation. (Compl. at 11–12). Judge Finan is not named in the caption of the Complaint. Accordingly, the Court will not address Stanfield's dissatisfaction with the outcome of his appeal.

## II.  DISCUSSION

### A.  Standard of Review

Defendants style their Motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d).  See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom., 684 F.3d 462 (4th Cir. 2012).  Pursuant to Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion.  First, that the "parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and second, "that the parties first 'be afforded a reasonable opportunity for discovery.'"  Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).  "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the

grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." "[T]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

Here, Defendants caption their Motion in the alternative for summary judgment and attach matters beyond Stanfield's Complaint for the Court's consideration. Stanfield has not submitted a Rule 56(d) affidavit expressing a need for discovery, and he attached extra-pleading materials to his Opposition. Accordingly, the Court will treat Defendants' Motion as a motion for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden

of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

B.  **Analysis**

At bottom, the Court concludes that Stanfield's classification does not implicate a protected liberty interest.

An inmate has a right to have erroneous information expunged from his files if: (1) the information is in his file; (2) it is false information that is not merely evaluations or opinions; and (3) the information is relied on to a constitutionally significant degree, such as implicating an inmate's liberty interest. Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979).

Defendants contend that Stanfield's claims fail to satisfy the third prong. In response, Stanfield asserts that his STG designation is relied on to a constitutionally significant degree because it: (1) kept him from preferred jobs and programming; (2) denied him the ability to progress towards parole; and (3) resulted in a temporary out-of-state transfer, which took Stanfield away from a legal proceeding. The Court addresses Stanfield's assertions in turn.

1.  **Jobs and Programming**

Defendants argue that prisoners do not have a protected liberty interest in prison jobs or programming. The Court agrees.

Prisoners "do not have a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned, or to access education or rehabilitative programs." Burrell v. Sowers, No. PJM-09-1038, 2012 WL 628506, at *13 (D.Md. Feb. 24, 2012) (collecting cases).  In particular, prison work assignments are "matters . . . within the discretion of prison officials," and denial of employment does not, in and of itself, abridge any constitutional right of the inmate. Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). Because an inmate does not have an independent constitutional right to employment, "prison officials may generally terminate an inmate from his job for any reason without offending federal due process principles." Tibbs v. Hershberger, No. JKB-13-2340, 2014 WL 3956308, at *7 (D.Md. Aug. 8, 2014), aff'd, 589 F.App'x 207 (4th Cir. 2015). Similarly, "[a]n inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest." Id. (collecting cases). In this case, Stanfield alleges that he was denied access to prison jobs and programming because of his STG designation. Because prisoners do not have a protected liberty interest in having access to prison programming or in obtaining and keeping a prison job, the Court concludes that such allegations do not implicate a constitutionally protected right. Thus, Stanfield's allegations related to prison jobs and programming do not confer a right to have his STG designation expunged.

2. **Parole**

Defendants maintain that Stanfield does not allege a constitutional injury related to parole. The Court agrees.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012) (alteration in original) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). As a result, "a prisoner typically cannot mount a challenge against a state parole review procedure on procedural or substantive due process grounds." Tibbs, 2014 WL 3956308, at *7. Here, Stanfield does not specifically mention parole in his Complaint. Instead, he merely states that his STG designation "disrupted" his "prison life . . . geared to the normal and proper course of [me] earning my freedom." (Compl. at 10). This allegation is not sufficient to implicate a liberty interest in parole. In addition, Stanfield's general allegation fails to allege a specific harm. Tibbs, 2014 WL 3956308, at *7. Thus, the Court concludes that Stanfield does not allege a constitutional injury related to parole. See id. Accordingly, any allegations Stanfield brings related to parole do not confer a right to have his STG designation expunged.

### 3. Out-of-State Transfer

Defendants contend that Stanfield's allegations related to his out-of-state transfer do not satisfy the third prong. The Court agrees.

As long as a prisoner is properly convicted, prison officials may transfer him from one institution to another without implicating due process concerns. See Scheuerman v. Bozman, No. DKC 09-1386, 2010 WL 761125, at *6 (D.Md. Mar. 1, 2010), aff'd, 382 F. App'x 284 (4th Cir. 2010); Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); see also Olim v. Wakinekona, 461 U.S. 238, 238 (1983) ("Confinement in another State is

within the normal limits or range of custody which the conviction has authorized the transferring State to impose."). In addition, Stanfield does not point to any Maryland statute or regulation that creates an enforceable expectation of a liberty interest regarding his transfer to an out-of-state prison. See Scheuerman, 2010 WL 761125, at *6. The Court, therefore, concludes that out-of-state transfer does not in and of itself implicate a liberty interest.

Stanfield's allegation that his out-of-state transfer took him away from his legal proceeding possibly implicates a liberty interest, but nevertheless fails for two reasons. First, to establish a constitutional claim for denial of access to the courts, a prisoner must show not only that a prison's actions "hindered his efforts to pursue a legal claim," Lewis v. Casey, 518 U.S. 343, 351 (1996), but he must also establish actual injury. Lewis, 518 U.S. at 349. To make a showing of actual injury, the prisoner must demonstrate that he did not have access to the resources necessary "to attack [his] sentence[ ], directly or collaterally." Id. at 355. Stanfield's assertion that his transfer "took him out of state away from . . . his personal legal proceeding due to his incarceration that he was working on" fails to make such a showing because he does not state that the transfer hindered his legal proceeding or allege an actual injury. (Compl. at 10). Second, the record establishes that Stanfield was transferred to another state from March 15, 2007 to June 10, 2008, (Pl.'s Resp. Defs.' Mot. Dismiss Ex. A at 4, ECF No. 14-2), but his STG status was first assessed in 2009, and DPSCS found no gang affiliation at that time. (Beeman Decl. ¶ 2, ECF No. 11-3; Shimko Decl. ¶ 2, ECF No. 11-4). Defendants, therefore, could not have relied on Stanfield's STG status to a constitutionally significant degree when

they decided to transfer him to another state.  Thus, the Court concludes that Stanfield's allegation does not confer a right to have his STG designation expunged.

In sum, none of Stanfield's allegations entitle him to have his STG designation expunged.  Accordingly, Defendants are entitled to judgment as a matter of law and the Court will grant Defendants' Motion.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 11).   A separate Order follows.

Entered this 27th day of March, 2018.                             /s/
                                                                                            _____
                                                                                            George L. Russell, III
                                                                                            United States District Judge